IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-387-FL

| | |
|---|---|
| PATRICIA A. WILLIAMS, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-24, DE-30] pursuant to Fed. R. Civ. P. 12(c). Claimant Patricia Williams ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

**STATEMENT OF THE CASE**

Claimant protectively filed an application for a period of disability, DIB and SSI on August 25, 2008, alleging disability beginning February 17, 2002. (R. 12). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on August 20, 2010, at which Claimant was represented by counsel and a vocational expert ("VE")

appeared and testified. *Id.* Claimant amended her alleged onset date to January 14, 2009 at the hearing. *Id.* On October 4, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 12-20). On May 8, 2012, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges that the ALJ made an improper assessment of Claimant's credibility. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 7.

**FACTUAL HISTORY**

## I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 14). Next, the ALJ determined Claimant had the following severe impairments: hypertension, diabetes mellitus, obesity, depression, and anxiety. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in her activities of daily living, moderate difficulties in social functioning, and mild difficulties in concentration, persistence and pace, with no episodes of decompensation. (R. 15).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work.[1] (R. 16). The ALJ also identified the following non-exertional limitations: only simple, repetitive tasks with minimal interpersonal demands. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 16-18). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a daycare attendant, teacher's aide, residential manager or caseworker. (R. 18). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

opportunities that exist in significant numbers in the national economy. *Id.*

## II.     Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 61 years old and unemployed. (R. 29). Claimant is a college graduate with a Masters Degree in educational technology. *Id.* Claimant was last employed with Little Hands and Feet Daycare Center for approximately three months, where her duties included filling in for other teachers on break. *Id.* Claimant's past work experience includes a myriad of other jobs, none lasting longer than six months at a time, though Claimant has more extensive experience in various fields over the years. (R. 29-30). Claimant testified that she worked as a counselor for women released from prison, having almost five years experience. (R. 30). Claimant testified that she also worked as an educational assistant with almost four years experience. (R. 30-31). Finally, Claimant testified that she worked as a residential manager at a halfway house, having almost six years experience in that capacity. (R. 31). Claimant testified she has maintained many different jobs because she was repeatedly fired from positions. (R. 31-32). Claimant testified she has looked for employment, but has not been successful. (R. 39).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. These medical conditions include depression, arthritis, diabetes, and fatigue. Claimant testified that her emotional problems are her predominant problem. (R. 37). Claimant testified she has a history of psychiatric problems from age 19 and that her mental health treatment over the years has been sporadic. (R. 38). Claimant testified that her only consistent mental health treatment was in 1987 and beginning again in 2009. (R. 38-39). Claimant testified that she has low energy and sleeps almost 14 hours each day, which has been the pattern for almost

5

two years. (R. 33-34). Claimant testified she has crying spells and feels overwhelmed by life, but does not have suicidal thoughts. (R. 33). Claimant testified she has no family or friend connections, but she is raising her two teenage grandsons. (R. 33-34). Claimant testified that taking her medication helps to keep her from being "down." (R. 34). Claimant testified that she attends church, with either her pastor or church friends driving her. (R. 38). Claimant testified that she has pain in her legs due to arthritis, specifically her hips, making it difficult to walk up and down flights of stairs. (R. 34-35). Claimant testified that at times she has used the electric cart in stores. (R. 35). Claimant testified that her grandsons have helped with chores around the house such as vacuuming, folding clothes, and cooking for almost two years. (R. 36-37). Claimant testified that her grandsons also help with grocery shopping. (R. 37).

## III. Vocational Expert's Testimony at the Administrative Hearing

Theodore Sawyer testified as a VE at the administrative hearing. (R. 39-44). After the VE's testimony regarding Claimant's past work experience (R. 41), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether jobs were available assuming the individual has the physical capacity to perform medium work involving simple, routine and repetitive tasks with minimal interpersonal demands. (R. 42). The VE responded that the following jobs would be available in significant numbers: (1) hand packager (DOT# 920.587-018); (2) cleaner (DOT# 919.687-014); and (3) laundry worker (DOT# 361.684-014). (R. 42-43). The ALJ next asked whether jobs would be available assuming the hypothetical individual was fatigued, sleeping 14 hours a day, overwhelmed, unable to walk distances, and had low energy. (R. 43). The VE responded that there were no jobs available to accommodate the hypothetical individual. *Id.*

6

## DISCUSSION

### I. The ALJ properly assessed Claimant's credibility.

Claimant contends substantial evidence does not support the ALJ's credibility decision. Pl.'s Mem. at 7. Specifically, Claimant contends that the ALJ failed to cite "adequate reasons for finding [Claimant] lacking in credibility," specifically with respect to her physical complaints. *Id.* at 8. This court disagrees.

As an initial matter, the court recognizes that it is not the role of this court to determine whether Claimant's testimony was in fact fully credible. *Craig*, 76 F.3d at 589. Rather, the question for the court is whether the ALJ applied the proper legal standard in assessing Claimant's credibility and whether the ALJ's decision is supported by substantial evidence. *Id.* Federal regulations, 20 C.F.R. §§ 404.1529(a), 416.929(a), provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, whether a person is disabled by pain or other symptoms is a two-step process. *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* at 594; *see also* SSR 96-7p, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The second step in the inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p,

7

1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See id.* at 595-96. The ALJ is not obligated to accept the claimant's statements at face value; rather, he "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *3.

Here, the ALJ applied this two-step process in assessing Claimant's statements regarding her symptoms. The ALJ first determined that Claimant's medically determinable impairments could reasonably be expected to produce the symptoms Claimant alleged. (R. 17). The ALJ then found that Claimant's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they are inconsistent with the RFC assessment. *Id.* After reviewing the ALJ's decision, this court finds the ALJ made the necessary findings in support of his credibility determination regarding Claimant's complaints pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (recognizing an ALJ's observations regarding credibility should be given great weight). The ALJ stated that the record does not contain evidence showing the level of limitation alleged by the Claimant. (R. 17). Specifically, the ALJ found that Claimant was not limited in her daily activities to the extent she alleged in her testimony. (R. 17). The ALJ noted in his decision that Claimant testified her "daily activities include sleeping and spending time with her grandsons." (R. 17). Claimant contends that in providing the above statement about Claimant's activities, the ALJ failed to consider Claimant's hearing testimony that she receives substantial assistance from her grandsons in accomplishing household chores and is consistently fatigued. Pl.'s Mem. at 8. However, the ALJ's decision indicates he did not ignore Claimant's testimony regarding daily activities as Claimant suggests, but addressed such testimony

8

by indicating only what activities Claimant testified she affirmatively performed, not the activities she expressed an inability to perform. In no way did the ALJ mischaracterize Claimant's testimony by not explicitly mentioning the fact that Claimant testified she receives "substantial assistance" from her grandsons to complete household chores. Also, the ALJ did not fail to consider Claimant's testimony regarding her fatigue because he specifically mentioned Claimant's testimony that she sleeps 14 hours each day. (R. 17). Claimant argues her fatigue is "well documented throughout the record" and cites to supporting notes in the record. Pl.'s Mem. at 9. While there are records indicating fatigue, however, in his review of the entire record, the ALJ simply did not find Claimant's allegations fully credible and it is not for this court to re-weigh conflicting evidence. *Mastro*, 270 F.3d at 176.

In support of his finding that Claimant is not limited in accordance with her testimony, the ALJ cited various portions of the record. First, the ALJ cited a consultative examination performed in June 2009 which recorded Claimant as stating she was able to cook, clean, do laundry, shop, drive, take walks, sit, lie down, dress herself, walk without assistance, turn doorknobs, grasp objects, raise arms overhead, and read and write. (R. 17, 279). This same medical note indicated that Claimant had flexion and extension in her back and could tandem walk, which the ALJ cited. (R. 17, 279). Further, the ALJ specifically noted the June 2009 physical RFC assessment performed by Dr. Robert Pyle which concluded, after review of the record file, that Claimant was capable of medium work. (R. 290). The ALJ assigned this opinion great weight. (R. 17). Since Dr. Pyle's physical RFC assessment took place after Claimant's consultative examination, his RFC assessment specifically considered the treatment notes from the consultative exam earlier that year noting the extent of Claimant's daily activities. (R. 290). The RFC assessment also noted that Claimant "didn't report

9

any physical impairments." (R. 290). The ALJ also cited Claimant's own testimony that she is able to raise and care for her two teenaged grandchildren. (R. 34). Claimant contends that medium work RFC determination overstates Claimant's work ability and, therefore, the ALJ's reliance on the RFC opinion in discrediting Claimant is error.[2] Pl.'s Mem. at 8. However, the law permits an ALJ to consider all evidence of record, including the opinions of state agency medical consultants, in determining a claimant's credibility and it is not within this court's discretion to re-weigh the evidence before the ALJ. *See Mastro*, 270 F.3d at 176; 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

Upon a review of the medical records and the transcript of the hearing, the court finds that the ALJ's determination that Claimant's testimony was not fully credible is supported by substantial evidence in the record and the ALJ has set forth specific reasons for this finding. *See* SSR 96–7p. Although Claimant contends that the ALJ erred in assessing Plaintiff's credibility, what Claimant is actually asking this court to do is re-weigh the evidence in the record, accord more weight to the evidence supporting Claimant's position, and come to a different conclusion than the ALJ as to Claimant's credibility. It is not this court's role, however, to determine whether Claimant's testimony was credible. *Craig*, 76 F.3d at 589. Because it is clear from the record that the ALJ applied the correct legal standard in assessing Claimant's credibility and the ALJ's determination that Claimant's testimony was not fully credible is supported by substantial evidence in the record, the court finds that Claimant's contention that the ALJ erred in assessing

---

[2] In support of her argument, Claimant provides a favorable decision on a subsequent application in which Claimant was awarded benefits on September 24, 2012 with an amended disability onset of December 1, 2011. [DE-26]. The second application covers a different disability period. Therefore, the court only considers whether the ALJ decision before this court is supported by substantial evidence. *See Albright*, 174 F.3d at 476 (stating that a claimant's successive disability application is a separate claim if the recent application relates to a period of disability not yet adjudicated).

10

Claimant's credibility is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-24] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-30] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 20th day of August, 2013.

Robert B. Jones, Jr.
United States Magistrate Judge